**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| DANNY TUCKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:13-cv-137 |
| | § | |
| CITY OF GEORGETOWN, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE COURT: Danny Tucker files his original complaint and jury demand, complaining of City of Georgetown, Texas.

### A.  Nature of Action

1.      This is an employment discrimination and retaliation case brought pursuant to the Americans with Disabilities Act (ADA), 42 USC §12101, *et seq*., the Family and Medical Leave Act (FMLA), 29 USC §2601; the Age Discrimination in Employment Act (ADEA), 29 USC §623 *et seq*.;, and Texas LABOR CODE Chapters 21 and 451.

### B.  Jurisdiction and Venue

2.      This court has jurisdiction of Plaintiff's federal law claims pursuant to 28 USC §1331. It has supplemental jurisdiction of the state law claims under 28 USC §1367.

3.      Plaintiff has filed the requisite administrative charges of discrimination with EEOC and TWC-CRD. He has exhausted his administrative remedies and received appropriate right to sue letters. This suit is timely filed.

4.      The acts and omissions made the basis of this suit occurred in the Austin Division of the Western District of Texas.

## C.  Parties

5.      Plaintiff is a former employee of defendant, a firefighter disabled as a result of an on-the-job incident.

6.      Defendant is a municipality, a local unit of government, organized and existing under the law of the State of Texas. Service of process may be delivered to Defendant's City Manager, Paul E. Brandenburg at City of Georgetown, Texas, City Hall, 113 E. 8th Street, Georgetown, Texas 78626.

## D.  Relevant Facts

7.      Plaintiff served the people of Georgetown, Texas as a professional firefighter from December 25, 2000 until May 21, 2011, when he became disabled for pursuing that line of work as a result of a traumatic injury to his psyche diagnosed by this treating physician and other health care providers as Post Traumatic Stress Disorder. Until the time of his disabling injury, his service had been professionally competent and honorable.

8.      After responding to a catastrophic vehicle fire call on May 20, 2011, involving a teenage driver who had to be extracted from the burning vehicle, Plaintiff began to experience Post-Traumatic Stress symptoms. The symptoms included: lack of sleep, intrusive thoughts, nightmares, anxiety, hyper-vigilance, distress on exposure to reminders of the event and poor concentration. Plaintiff reported these symptoms to Carl Boatright, battalion chief, and supervising officer Shawn Carter, and requested assistance on or about May 26, 2011.

9.      Plaintiff was given an 800 number for the Employee Assistance Program. This particular number was not valid as the City of Georgetown was no longer a subscriber to the service. He was then given another number by Carl Boatright, called the second number, and after 12 days, got to see a counselor, Jim Colbert.

Plaintiff's Original Complaint                                                                                               2

10.     On Sunday, May 29, 2011 while on duty at the fire station Plaintiff decided he could not do the work anymore because of the intrusive PTSD symptoms. He notified Shawn Carter that help was needed and that he would not be able to finish his shift. Carter notified the battalion chief, Carl Boatright, who then notified Fire Chief Fite. Chief Fite came to see Plaintiff at the station and simply said, "Bad things happen, get over it." He suggested Plaintiff talk to his pastor for help. Plaintiff told Chief Fite that he needed help, needed to leave and would not be able to continue work until he had some assistance. Chief Fite finally agreed to let Plaintiff leave but said if he did, he would be ordered to report to modified duty the following work day which was Tuesday, May 31, 2011 at 8 a.m.

11.     Plaintiff called his wife to pick him up because his anxiety was too intense to drive. He eventually found some help with the Williamson County Mobile Outreach team and the firefighters union. On Sunday, May 29, 2011, he met with Annie Burwell, LBSW, the Director of the Mobile Outreach Team. At this meeting, Ms. Burwell told Plaintiff he was experiencing symptoms of Acute Traumatic Stress Disorder. She offered several suggestions to get through the crisis until he would be able to seek additional assistance. She assured Plaintiff that the County would provide as much support as necessary to help him get through this situation.

12.     Plaintiff reported for modified duty on Tuesday, May 31, 2011 even though he was still experiencing acute trauma symptoms. He told the Chief he needed to seek assistance from somewhere and since there appeared to be no support from the city, he would go to the Williamson County Mobile Outreach Team for further assistance. Chief Fite told Plaintiff that if he missed any work seeking help for his condition between 8 a.m to 5 p.m, Monday through Friday without his permission, he would be considered Absent Without Leave (AWOL) and

Plaintiff's Original Complaint                                                                                    3

terminated. For the next two and a half days, Plaintiff stayed on modified duty under this threat. Also on that day, Anthony Rector the victim services coordinator found Plaintiff at lunch. Plaintiff told Rector that he was not getting any support from Chief Fite. Rector told Plaintiff that he would get back with him soon with some advice on where he could go to get assistance. Plaintiff did not hear back from Anthony Rector, so on Thursday, June 2, 2011 he called him. In that conversation Rector told Plaintiff that Chief Fite knew they had talked and complained to his boss, Police Chief Nero. Anthony Rector said that Chief Nero told him that he was no longer to talk to the Fire personnel and he was not, therefore, able to talk to Plaintiff.

13.     On Thursday, June 2, 2011, Plaintiff's wife, who is a nurse, and Kevin Russell, City of Georgetown's Human Resources (HR) Director steered Plaintiff to Dr. Murray Snook under the City's Workers' Compensation Plan. At this time Plaintiff was diagnosed with Post Traumatic Stress Disorder (PTSD). With this diagnosis, Dr. Snook stated that it would be beneficial to refrain from all firefighting duties including modified duty at the administration building. After supplying the appropriate information to the Human Resources Department, a Workers' Compensation claim was initiated, with simultaneous dissipation of benefits under the Family and Medical Leave Act (FMLA).

14.     Plaintiff started seeing Jim Colbert, through the Employee Assistance Program, on or about June 7, 2011. Colbert told Plaintiff he confirmed the diagnosis of PTSD and stated his strong agreement that time away from Fire Services would be beneficial in healing.

15.     On or about June 15, 2011, Plaintiff read an email that was sent out to all of Fire Service Department. The email was congratulating the firefighters that saved the teenager's life on May 20, 2011. It also mentioned that the firefighters were honored at the City Council meeting on June 14, 2011. Plaintiff was not mentioned at all in any of the honors. This exclusion

was personally devastating and set back his recovery. The exclusion was in retaliation for Plaintiff having sought professional assistance, rather than "getting over it" as Chief Fite had ordered.

16.     Plaintiff saw Dr. Suess on July 6, 2011. At this visit, she confirmed the diagnosis of PTSD and told Plaintiff she agreed with the plan to continue his off-duty orders until his treatment was complete. She informed Plaintiff he was not presently fit for duty, and that before he would be released to return to Fire Service, she would do a psychological evaluation. Plaintiff continued counseling with Jim Colbert on a weekly basis and Dr. Snook on a monthly basis as required by the City.

17.     On August 5, 2011, Plaintiff was informed he had been scheduled for a psychological evaluation set for August 8, 2011 with Dr. Suess. Dr. Suess's demeanor had changed completely from his initial visit with her. Plaintiff's symptoms, however, had not changed since he had previously seen her, and he was surprised when she recommended he return to modified duty in Fire Services on August 15, 2011. Plaintiff alleges Dr. Suess was pressured by the City or its insurance company to change her evaluation and treatment plan.

18.     Plaintiff was notified on August 11, 2011 that his Workers Compensation benefits would be suspended since he had been released to return to work in a modified position. Plaintiff was concerned because he knew he was not ready to return to Fire Services. Plaintiff contested the termination of Workers Compensation benefits, and obtained a second opinion medical examination from Murray Snook, M.D. on August 12, 2011. Dr. Snook was unsure why Dr. Suess had ordered Plaintiff back to work, and remarked he thought he was the treating physician in this Workers Compensation claim. He stated that in order for Plaintiff to heal completely, he should continue counseling and remain off work from Fire Services.

19.     At this point, it appeared Plaintiff's alternatives were to follow his doctor's orders, and risk losing his job or to follow the insurance company's doctor's orders, and risk losing his health or his life. The only other alternative at this point appeared to involve application for leave benefits under the Family and Medical Leave Act (FMLA). Plaintiff filed the appropriate paperwork, but was informed by Kevin Russell that additional documentation was required in order to approve the request. In pursuit of the additional documentation required by Mr. Russell, Plaintiff made an appointment with the Workers Compensation Dispute Department.

20.     During the same time frame, Plaintiff's wife telephoned the Texas Municipal League (TML) Workers Compensation Department and asked for the identity of the treating physician on her husband's case. She was told it was Dr. Snook.

21.     Plaintiff and his wife also met with representatives from the Office of Injured Employee Counsel on two occasions. During this meeting, Ms. Schar-Greena called TML and inquired on who was the treating physician on his case. This time TML identified Dr. Suess. When she repeated the name to the TML representative, there was hesitation and then it was corrected to be Dr. Snook.

22.     On or about August 23, 2011 Plaintiff received an official written order from Chief Fite to personally call every Monday between 1300 and 1400. He was ordered to make 3 attempts to call the Chief. No messages could be left. After the 3rd attempt he was required to call Chief Shell.

23.     Dr. Snook recommended that Plaintiff get a second opinion from a Psychiatrist. On September 13, 2011 Plaintiff met with Dr. Claudia Byrne. She confirmed the diagnosis of

PTSD and recommended that Plaintiff continue with the treatment plan of weekly counseling and monthly visits with Dr. Snook.

24.    On December 5, 2011, Plaintiff saw Dr. Byrne. She had been notified by the City of Georgetown HR department that there were a couple of job offers within the city. Dr. Byrne and Plaintiff decided that an open position in the municipal library would be appropriate. Plaintiff was instructed by Dr. Byrne to report for duty at the Library on January 16, 2012.

25.    On January 16, 2012 Plaintiff reported to the Library at 0800. It was not open so he went to the Human Resource Department to check in. The staff at HR did not know that Plaintiff was supposed to work in the Library. He was notified at 0845 by HR that the job was no longer available and he was to go home.

26.    On February 1, 2012 Plaintiff saw Dr. Byrne, and was notified that there was a job offer in Parks and Recreation. Dr. Byrne disclosed that the City was adamant that Plaintiff come back to work somewhere in the City. Plaintiff was instructed to report to Parks and Recreation on February 6, 2012 at 8:00 a.m. He reported for work on February 6, 2012 in the Parks and Recreation Division. Plaintiff worked in this department for 5 weeks. On March 5, 2012 he was told by Kevin Russell that the City had violated State and Federal Law by allowing him to come back into a modified position outside the Fire Department. Plaintiff was told to go home. Russell did not explain, and Plaintiff did not understand, at the time, why his work with the Parks and Recreation Department was in violation of any law. To Plaintiff's knowledge, there had been no complaints about the quality of his work at the Parks and Recreation Department.

27.    Defendant has failed and refused to engage in the interactive process mandated by law and federal regulation to seek an appropriate accommodation for Plaintiff's disability.

28.    Other firefighters who have suffered visible injuries to their gross anatomical body structures have not been treated the way Plaintiff has been treated. For example, Justin Marks broke his leg in an off-the-job incident; was placed on modified duty in an administrative position and allowed as much time as necessary to heal. He was never forced to come back to duty until he was healed.

29.    Chief Fite, by his actions has shown a preference for younger firefighters. When a firefighter has a disability or files a workers' compensation claim, the Chief aggressively pursues that firefighter's resignation or termination.

30.    Plaintiff also alleges that Chief Fite discriminated against him and other firefighters who seek Workers Compensation benefits. For example, Joshua Taylor, a firefighter who blew out his knee while on the job filed a worker's compensation claim. In an exercise that involved a lot of stair climbing, he did not complete the stair climb because his knee was bothering him. He was the only one written up for not completing the stair climb even though there were other firefighter's, who were not pursuing Workers Compensation benefits that did not complete the stair climb exercise. In a roof ventilation exercise, a task Taylor completed, he was written up for not completing it "fast enough" even though there were others, who were not pursuing Workers Compensation benefits that had the same times.

31.    Plaintiff alleges he has been discriminated against because of a disability, including Post Traumatic Stress Disorder. He is treated differently than other firefighters who have suffered injuries to the visible anatomical structures of their bodies.  The exclusion from the June 14, 2011 awards ceremony is but one example of this discrimination. Chief Fite has demonstrated hostility to Plaintiff and for my condition throughout the ordeal.

Plaintiff's Original Complaint                                                                 8

32.     Plaintiff also alleges that City of Georgetown has attempted to interfere with his rights under FMLA and Texas Workers Compensation Act, and has retaliated against him because he sought the protections of those laws.

### E.   Legal Principles

33.     Plaintiff makes a disability discrimination claims under the ADA, 42 USC, §12112 and Texas LABOR CODE §21.051.

34.     Plaintiff makes disability retaliation claims under the ADA, 42 USC, §12203 and Texas LABOR CODE §21.055.

35.     Plaintiff makes age discrimination claims under the ADEA, 29 USC, §621, et. seq. and Texas LABOR CODE §21.051.

36.     Plaintiff makes an FMLA interference claim under 29 USC, §2615.

37.     Plaintiff makes an FMLA retaliation claim under 29 USC, §2615 (a) and §2615(b).

38.     Plaintiff makes a Workers Compensation retaliation claim under Texas LABOR CODE , Chapter 451.

39.     Defendant's insistence that Plaintiff work at some position in the City of Georgetown during the first year of medical leave from his injury in the line of duty was in direct violation of Texas LOCAL GOVERNMENT CODE, §143.073, which provides in pertinent part:

> "A municipality shall provide to a fire fighter or police officer a leave of absence for an illness or injury related to the person's line of duty. The leave is with full pay for a period commensurate with the nature of the line of duty illness or injury. If necessary, the leave shall continue for at least one year."

40.     Defendant's enthusiastic conduct in violation of a basic municipal civil service law is conclusive evidence of its discriminatory and retaliatory state of mind at all times material hereto.

### F. Remedies and Damages

41.     Plaintiff seeks to recover his statutory remedies, including, though not necessarily limited to the following:

      a.   Reinstatement to an appropriate position with back pay and benefits;

      b.   Restitution of full leave with pay status for those portions of the first year of medical leave when Plaintiff was required to work in violation of Local Government Code, §143.073.

      c.   Injunctive orders against further retaliation and discrimination;

      d.   Compensatory damages in amounts to be found by the jury;

      e.   Attorney fees;

      f.   Costs of court; and

      g.   Reasonable expert witness fees.

### G. Jury Demand

42.     Plaintiff demands a trial by jury.

### H. Prayer

43.     Premises considered, Plaintiff prays that Defendant be cited to appear and answer herein in the terms of the law; that upon notice and hearing temporary injunctive and equitable orders for reinstatement to a position consistent with his physician's restrictions with back pay and benefits for the pendency of this matter; that upon final hearing he have and recover judgment of and from Defendant for the full amount of his damages, statutory, and equitable remedies, including attorney fees, pre-judgment, and post-judgment interest, and for such other and further relief as the court may deem proper.

Respectfully submitted,



The Commissioners House at Heritage Square
2901 Bee Cave Road, Box L
Austin, Texas 78746
Telephone:512/328-9099
Facsimile: 512/328-4132
By: _____/s/_____
     John Judge
     State Bar No. 11044500